UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CARL CZERNIEJEWSKI

                      Plaintiff,

v.

MICHAEL J. ASTRUE,
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

                      Defendant.

**REPORT AND RECOMMENDATION**

07-CV-00476(A)(M)

---

This case was referred to me by Hon. Richard J. Arcara to hear and report in accordance with 28 U.S.C. §636(b)(1) (Dkt. #6). Before me are the parties' cross-motions for judgment on the pleadings pursuant to Fed. R. Civ. P. ("Rule") 12(c) (Dkt. ##10, 12). For the following reasons, I recommend that defendant's motion be DENIED, and that plaintiff's cross-motion be GRANTED in part and DENIED in part.

## PROCEDURAL BACKGROUND

Pursuant to 42 U.S.C. §405(g), plaintiff seeks review of the decision of the Commissioner of Social Security finding him disabled as of December 3, 2004 (Dkt. #1). Plaintiff filed an application for Disability Insurance Benefits ("DIB") on October 8, 2004 alleging disability beginning November 23, 2001 (T61-65).[1] A hearing was conducted before Administrative Law Judge William T. Vest, Jr. on July 26, 2006 (T402-440), and at that time plaintiff requested that his application be amended to reflect a disability onset of November 25, 2002 (T405). Plaintiff was represented at the hearing by Lewis Schwartz, Esq. (T402). On

---

[1] "T" refers to the administrative record.

August 30, 2006, ALJ Vest issued a decision finding plaintiff disabled beginning on December 3, 2004 (T24). ALJ Vest's determination became the final decision of the Commissioner on June 23, 2007 when the Appeals Council denied plaintiff's request for review (T6-8).

## FACTUAL BACKGROUND[2]

### A. Medical Evidence

Plaintiff complains of a long history of lumbar spine problems. A November 26, 2002 x-ray of his lumbar spine revealed "minimal spondylosis between L2-3 and L3-4 vertebra. Otherwise, negative lumbosacral spine" (T126). On November 25, 2002, plaintiff complained of back pain to Sivarama Kotikalapudi, MD(T174). On January 9, 2003 plaintiff again complained to Dr. Kotikalapudi of back pain radiating down his right hip, and Dr. Kotikalapudi ordered x-rays of both hips (T172-173). A January 14, 2003 x-ray of plaintiff's hip revealed minimal degenerative arthritis in the left hip and degenerative arthritis in the right hip joint (T124). On March 6, 2003 plaintiff complained to Dr. Kotikalapudi of back pain radiating down his right leg, but Dr. Kotikalapudi found that he had full range of motion in his back (T169). Dr. Kotikalapudi noted that plaintiff's radiating pain could be attributable to radiculopathy, sciatica or a herniated disc and ordered an MRI (Id.). A March 27, 2003 MRI of the lumbar spine revealed a "large extruded right lateral disk displacing exiting nerve roots and compromising neural foramen on the right at that level" (T123). On April 11, 2003 plaintiff advised Dr. Kotikalapudi that he had been unemployed for the previous two years, but supported himself by performing odd jobs (T165).

---

[2] I have only summarized those portions of the record relevant to resolving the parties' motions.

On August 14, 2003 plaintiff underwent a right intralaminar L4-5 epidural steroid injection (T127). Similar epidural injections were made on September 8, 2003 (T130). A November 3, 2003 x-ray of the lumbar spine found no evidence of an acute fracture or dislocation (T133). On November 10, 2003, Joseph Kowalski, M.D. diagnosed plaintiff with a L4-5 disk herniation and also performed a right sided discetomy of the L4-5 vertebrae (T150).

On November 20, 2003 plaintiff reported to Sikander Ailawadhi, MBBS, that the Lortabs he was prescribed adequately controlled his back pain (T164). On December 18, 2003 Dr. Kotikalapudi noted that plaintiff was able to perform sedentary work with frequent position changes, but indicated that plaintiff's "surgeon would be better able to assess the situation" (T160). On March 4, 2004 Dr. Kotikalapudi noted that plaintiff's back pain had decreased and he was no longer taking Loritab (T158). On July 8, 2004 plaintiff was treated by Jamil Alkhaddo, MD for back pain that started the previous day when he twisted his back (T153). An October 26, 2004 x-ray of the lumbar spine revealed "minimal spondylosis between L1-L2, L2-L3 and L3-L4 vertebrae" (T182).

On November 5, 2004 plaintiff was diagnosed with recurrent disk herniation of the L4-5 vertebrae with spinal stenosis and spondylolisthesis by Dr. Kowalski who performed a laminectomy and diskectomy of the L4-5 vertebrae, a right iliac crest bone graft, and a posterolateral arthrodesis of the L4-5 vertebrae (T195).

On March 16, 2005 plaintiff was examined by P. Jeffrey Lewis, M.D, who stated that plaintiff "did improve after the first operation, but postoperatively has not improved, in fact, his low back pain has become more severe" (T289). Dr. Lewis diagnosed plaintiff with "lumbar instability, disc desiccation and degeneration at L4-5 and L5-S1" (T290). Plaintiff underwent a

lumbar discectomy and fusion in December 2005 (T358) and the placement of pedicle instrumentation at the L4-5 vertebre in January 2006 (T310).

### B.     Consultative Examinations

Christine Holland, MD examined plaintiff on December 3, 2004 and diagnosed him with low back pain with "expect[ed] further improvement as he is further out from his surgery" (T207). Although plaintiff had full range of motion of his cervical and thoracic spines, his lumbar spine had limited range of motion (T206). Dr. Holland found that "currently [plaintiff] has limitations to standing, sitting, lifting, twisting, stairs, and heights" and suggested a re-evaluation after an appropriate time frame (Id.).

On February 11, 2005 disability analyst Laura Norwood prepared a Physical Residual Functional Capacity ("RFC") Assessment which concluded that plaintiff could occasionally lift less than 10 pounds, but could frequently carry 10 pounds (T245). She also found that plaintiff could stand or walk at least two hours in an eight hour workday and sit for a total of about six hours in an eight hour workday (Id.).

### C.     Administrative Hearing Conducted on July 26, 2006

Plaintiff, who was 45 years old at the time of the hearing, testified that he had not been employed since November 25, 2002 when he worked as a rack washer and food processor, which required him to lift and carry between 50 and 75 pounds (T407). Plaintiff lives in an apartment with two roommates and "basically, [he] just lay[s] around most of the day" (T408). Beyond this, each day he walks to the corner of his block and back, drives to doctor's

appointments, and visits his mother (T409). Plaintiff has not lifted anything heavier than a quart of milk and does not go shopping (Id.). His roommates perform all of his housework (T412). It takes him "quite a while" to dress and bath himself (T410). Plaintiff is only able to sit or stand for 10 minutes (T413).

Plaintiff initially denied that he supported himself with odd jobs (T411), but then testified that he cut the grass for a neighbor a couple of times in 2003 (T415). Although mowing grass caused plaintiff severe back pain, he testified that he did it for cigarette money (T418-419).

Plaintiff testified that despite undergoing five surgeries on his lumbar spine since 2002 that the pain in his back has gotten worse (T412-413). With pain medication, plaintiff rated his pain as being between seven and eight out of 10 (T413).

Vocational expert Peter Manzi testified that an individual with plaintiff's limitations as set forth in Ms. Norwood's Physical RFC Assessment (T245) could perform unskilled sedentary work which existed in significant numbers in the local and regional economies (T415-416). However, based upon plaintiff's self-described limitations, Mr. Manzi concluded that plaintiff was unable to work (T417).

D.  **Post-hearing Evidence**

Plaintiff submitted a Lumbar Spine RFC Questionnaire from Dr. Lewis dated August 2, 2006 stating that plaintiff "remains totally disabled 100% from any and all occupations" (T395).

E.   **ALJ Vest's August 30, 2006 Decision**

ALJ Vest found that (1) plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 25, 2002; (2) plaintiff's degenerative disc disease is a severe medically determinable impairment; and (3) since the alleged onset date of the disability, plaintiff's impairment did not meet or equal any of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 (T19-20).

ALJ Vest concluded that prior to December 3, 2004 plaintiff had the capacity to "to lift and carry 10 pounds, stand or walk for up to 2 hours in an 8-hour workday and sit for at least 6 hours in an 8-hour workday. . . . [P]erform work not requiring pushing or pulling over 10 pounds" (T21). In reaching this determination, ALJ Vest found that plaintiff's "medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are only partially credible prior to December 3, 2004. . . . The claimant had undergone a discectomy prior to December 2004 but otherwise, he had required only conservative treatment for his pain. The record shows that he was able to walk unassisted. Findings on examinations from November 25, 2002 through December 2, 2004 were generally mild except for the period of time when the claimant required surgery" (Id.). ALJ Vest also based his determination on the fact that "the DDS disability analyst found that the claimant could [sic] 10 pounds occasionally, stand or walk for at least 2 hours in an 8-hour workday and sit for about 6 hours in an 8-hour workday. Significant weight is given to these findings through December 2, 2004 because they are consistent with the objective findings on examinations through that date" (Id.).

As to the period after December 2, 2004, ALJ Vest concluded that plaintiff had the RFC "to lift and carry up to 10 pounds occasionally. He can stand and walk for less than 2 hours in an 8-hour workday and sit for up to 6 hours in an 8-hour workday when he is allowed to alternate sitting and standing freely. . . . [He] can perform work activities that allow for unscheduled breaks in performance caused by recurrent back and leg pain, lasting for undetermined periods of time" (T21-22). In reaching this conclusion ALJ Vest found that beginning on December 3, 2004 plaintiff's "allegations regarding his symptoms and limitations [were] generally credible . . . . Beginning December 3, 2004 and continuing through the date of this decision, [plaintiff] has required a series of surgical procedures and continues to experience severe back and leg pain. His treating neurosurgeon confirms that he is unable to perform any work activities on a consistent basis" (T22). ALJ Vest further found that the disability analyst's RFC determination (T245) was "not consistent with the medical evidence beginning December 3, 2004 and continuing through the date of this decision. The claimant's treating physician found that the claimant is unable to lift, carry, walk or stand for significant periods of time and the physician concluded that the claimant is totally disabled. Beginning December 3, 2004, great weight is given to the opinions of Dr. Lewis based on his expertise and because he personally treated the claimant's condition over a significant period of time" (T22).

Based on plaintiff's RFC, ALJ Vest concluded that plaintiff was unable to perform his past work since the alleged disability onset date. He further found that prior to December 3, 2004 plaintiff could perform other work, but after that date was unable to do so (T23-24). Therefore, ALJ Vest concluded that plaintiff was disabled from December 3, 2004

through the date of the decision and recommended a continuing disability review based upon plaintiff's prognosis (T24-25).

## DISCUSSION AND ANALYSIS

A.   **Scope of Judicial Review**

The Social Security Act states that, upon review of the Commissioner's decision by the district court, "the findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. §405(g). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938).

Under this standard, the scope of judicial review of the Commissioner's decision is limited. This Court may not try the case *de novo*, nor substitute its findings for those of the Commissioner. See Townley v. Heckler, 748 F. 2d 109, 112 (2d Cir. 1984). Rather, the Commissioner's decision may be set aside "only where it is based on legal error or is not supported by substantial evidence ". Balsamo v. Chater, 142 F. 3d 75, 79 (2d Cir. 1998). If supported by substantial evidence, the Commissioner's decision must be sustained "even where substantial evidence may support the plaintiff's position and despite that the Court's independent analysis of the evidence may differ" from that of the Commissioner. Martin v. Shalala, 1995 WL 222059, *5 (W.D.N.Y. 1995) (Skretny, J.).

However, before deciding whether the Commissioner's determination is supported by substantial evidence, I must first determine "whether the Commissioner applied the

correct legal standard". Tejada v. Apfel, 167 F. 3d 770, 773 (2d Cir. 1999). "Failure to apply the correct legal standards is grounds for reversal." Townley, supra, 748 F. 2d at 112.

## B. The Disability Standard

The Social Security Act provides that a claimant will be deemed to be disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). The impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . ." 42 U.S.C. §1382c(a)(3)(B).

The determination of disability entails a five-step sequential evaluation process:

"1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a severe impairment which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a severe impairment, the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not listed in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could

perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps."

Shaw v. Chater, 221 F. 3d 126, 132 (2d Cir. 2000).

### C. Did ALJ Vest properly follow SSR 83-20?

Plaintiff argues that ALJ Vest failed to comply with the requirements of SSR 83-20 when he determined that the onset of his disability was December 3, 2004, which was contrary to his work history and medical evidence and not supported by testimony of a medical advisor (Dkt. #13, Point I). In response, defendant argues that a medical advisor was not necessary to determine the onset date of plaintiff's disability and that ALJ Vest otherwise properly complied with SSR 83-20 (Dkt. #14).

"As a general rule, a claimant's allegation regarding the date of onset must be accepted if it is consistent with medical evidence in the record." McCarthy v. Astrue, 2007 WL 4444976, *7 (S.D.N.Y. 2007); SSR 83-20, 1983 WL 31249, *3 (1983) ("In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available.").[3] "Where the ALJ determines that the date of onset is other than what the claimant alleges, he has an affirmative obligation to adduce substantial evidence to support his [finding]". McCarthy, Id. Although "the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity [,] . . . medical evidence serves as the primary element in the onset determination." SSR 83-20, 1983 WL 31249 at *2. However, "with slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date

---

[3] SSRs are binding on the Commissioner. See 20 C.F.R. § 402.35(b)(1).

an impairment became disabling. . . . In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process." Id. at *3.

"If the medical evidence is ambiguous and a retroactive inference is necessary, SSR 83-20 requires the ALJ to call upon the services of a medical advisor to insure that the determination of onset is based upon a legitimate medical basis." Grebenick v. Chater, 121 F.3d 1193, 1201 (8th Cir. 1997); see Telfair v. Astrue, 2007 WL 1522616, *6 (S.D.N.Y. 2007) ("Although there is no controlling Second Circuit precedent on this issue, case law applying Ruling 83-20 in other circuits indicates that an ALJ should consult a medical advisor at the hearing when the medical evidence in the record is ambiguous.").

ALJ Vest used the date of Dr. Holland's consultative examination as the disability onset date (T207). However, "an ALJ may not assume that a claimant developed a [disability] on the date of SSA's consultative psychiatric examination, absent evidence to support such a conclusion." Arroyo v. Callahan, 973 F. Supp. 397, 399 (S.D.N.Y. 1997).

The evidence regarding the plaintiff's disability onset date is ambiguous. Plaintiff underwent a discectomy on November 10, 2003 for "a large disk herniation", which Dr. Kowalski noted only brought "temporary relief of his leg pain" (T150-151). Dr. Lewis also noted that plaintiff "did improve after the first operation, but postoperatively has not improved, in fact, his low back pain has become more severe" (T289). Consequently, plaintiff underwent a laminectomy and diskectomy on November 5, 2004 for a "large ventral disk herniation" (T195-196). Thus, while there was a period of improvement following the first surgery, the medical evidence is ambiguous as to the onset of his disability. In fact, Dr. Holland's December 3, 2004

consultative examination, which ALJ Vest apparently relied on in establishing the disability onset date, provided little concerning plaintiff's condition other than to "expect further improvement as he is further out from his surgery" and to "suggest re-evaluation after appropriate time frame" (T207).

Therefore, I believe that it was improper for ALJ Vest to conclude that plaintiff's disability commenced on December 3, 2004 without calling a medical advisor to testify at the hearing. Only in doing so would he have been able to make a proper, medically-based inference regarding plaintiff's disability onset date. "Because the Commissioner committed legal error in failing to follow the procedures required of the ALJ by SSR 83-20, it is unnecessary to consider the plaintiff's additional claim that the Commissioner's determination was not based on substantial evidence, and the case is remanded to the Commissioner for further proceedings. To determine a medically-reasonable disability onset date for the plaintiff, the ALJ on remand should call on the services of a medical advisor and follow the additional procedures outlined in that ruling. A convincing rationale should be given for the disability onset date that is chosen." Telfair, supra, 2007 WL 1522616 at *8.

## CONCLUSION

For these reasons, I recommend that defendant's motion for judgment on the pleadings (Dkt. #10) be DENIED, and that plaintiff's cross-motion for judgment on the pleadings be GRANTED in part and DENIED in part. Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Rule 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority. Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report and Recommendation, may result in the District Judge's refusal to consider the objection).

**SO ORDERED.**

Dated:        August 28, 2008

_/s/ Jeremiah J. McCarthy_
JEREMIAH J. MCCARTHY
United States Magistrate Judge